IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GERIANNA W. JONES | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | 4:20-cv-00129-A |
| | § | |
| ALLSTATE FIRE AND CASUALTY | § | |
| INSURANCE COMPANY | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

1. Plaintiff, **GERIANNA W. JONES**, complains of **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY**, hereinafter referred to as "Defendant UIM Carrier" and for cause of action, would respectfully show the Court the following:

## PARTIES

2. Plaintiff is an individual residing in Tarrant County, Texas.

3. Defendant UIM Carrier, **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,** has appeared and answered herein.

## FACTS

4. Plaintiff proved legal entitlement to the contractual payments for her UIM policy and Allstate refused to pay or make any offer of settlement during the litigation and before Judgment was entered in Cause No. 352-290275-18, Tarrant County, Texas.

5. On or about the evening of February 2, 2013, Driver-Cassandra L. Sasser (Sasser), a 40-year-old female entered the T&P Tavern establishment to attend a birthday-party event for her friend. The T&P Tavern served alcoholic beverages to Sasser, which alcoholic beverages were

consumed by Sasser. Driver-Sasser decided to go to the Cadillac Bar to continue drinking and celebrating her friend's birthday, rather than return to her residence.

6. While at the Cadillac Bar, the Cadillac Bar served one or more alcoholic beverages to Sasser, including an alcoholic beverage called a "Wild Ass Indian" drink, of which the alcoholic beverage(s) was/were consumed by Sasser. Not long thereafter, Sasser and her friends left the Cadillac Bar establishment and went across the street to another "club" or "bar" establishment.

7. Around midnight on February 3, 2013, Driver Sasser was driving her Dodge Charger while she was intoxicated.

8. Driver Sasser rear-ended Gerianna Jones vehicle while Gerianna Jones was stationary at a stop light.

9. Gerianna Jones went to the hospital within nine hours after the crash and later underwent back surgery.

10. Gerianna Jones treating surgeon testified the back surgery was necessitated by the crash.

11. Gerianna Jones had paid Allstate premiums for automobile insurance coverage to cover for this type of loss – UIM (underinsured motorist coverage).

12. The bar and Sasser driver's insurance adjusters settled for a total of two hundred and fifty thousand dollars ($250,000.00). All of these facts were known to Plaintiff's UIM insurance company, Allstate.

13. Allstate would only get a one hundred thousand dollar ($100,000.00) credit from the negligent driver's (Sasser) coverage.

14. Despite full knowledge of these facts, Allstate denied the claim and refused to pay the one hundred thousand dollar ($100,000.00) Allstate UIM policy.

15. The dram shop Defendant insurance carrier offered and paid an additional $150,000 based on the damages and liability facts, bringing the claim value to $250,000. Allstate would not evaluate the case to pay the UIM $100,000 insurance limits.

16. Allstate knew that Plaintiff incurred more than one hundred and thirty thousand dollars ($130,000.00) in medical expenses from the occurrence and filed by affidavit in the underlying cause of action. Plaintiff had lost wages from her permanent disability from the crash in excess of two hundred thousand dollars ($200,000.00).

17. Despite knowing this Allstate never made an offer to pay any portion of the UIM coverage to Gerianna Jones.

18. Liability of Sasser was clear at all material times.

19. Defendant failed to evaluate her claim timely.

20. Allstate never challenged liability and finally stipulated to liability at trial. Liability was clear throughout the claim.

21. Jones was forced to hire an attorney and prosecute both the liability and damages against Allstate.

22. Allstate hired a result-oriented doctor, Dr. Bernie McCaskill, known to claim medical care is unrelated to a crash.

23. Allstate has used Dr. Bernie McCaskill for many years despite knowing he has been struck or limited by Courts under the *Daubert* standard.

24. Dr. Bernie McCaskill would not testify at trial, and the Defendant knew this when they hired him to controvert affidavits filed in the underlying cause of action. Allstate forced their insured to incur the expense of $5,000 to pay an orthopedic surgeon for his time plus a videographer.

25. Allstate offered no exhibits or witnesses at trial. The jury returned a verdict for $595,000. in actual damages in the UIM case.

26. The jury verdict clearly shows Allstate's negligent evaluation, if any, or intentional denial of payments.

27. The Court entered a Judgment on December 5, 2019. The Judgment became final. Despite previous demands, the Judgment remained unpaid until February 14, 2020.

## Negligence of ALLSTATE

28. On the occasion in question, **Defendant Allstate,** was guilty of one or more or all of the following acts of negligence among others and negligence per se which proximately caused the damages and injuries sustained by the Plaintiff:

   a. In failing to make a reasonable offer;

   b. In unreasonably and reckless delaying insurance benefits Plaintiff paid for;

   c. Failing to properly and reasonably evaluate the case or adjust the claim as a reasonable and prudent adjuster would under the same or similar circumstances for a first party case;

   d. Intentionally forcing the Plaintiff to go through years of litigation and deny her the full policy benefits she paid for by forcing her to deplete the coverage on attorney fees and reasonable case expenses;

   e. Negligently failing to pay the Judgment;

   f. Unjustifiable delay in processing the Plaintiff's claim;

   g. Conducting a result-oriented defense to deny or delay payment of the claim.

## DTPA & INSURANCE CODE VIOLATIONS

29. Plaintiff is a consumer and individual under Chapter 541 of the Insurance Code and/or the DTPA. Plaintiff is an insured and beneficiary of an automobile policy sold and issued by Defendants. Defendants violated Sections 541.051, 541.060-541.062, and 542.052 of the Texas

Insurance Code by misrepresenting the coverage.

30. Defendant UM/UIM Carrier Allstate is vicariously liable for its employee and adjuster(s)' conduct at all material times including under the doctrine of respondeat superior.

31. Defendant UM/UIM Carrier Allstate are liable for making or causing to be made misrepresentations about:

    a. the terms of the automobile policy, including the benefits of UM/UIM coverage;

    b. the benefits or advantages of an UM/UIM policy;

    c. The prompt payment of claims and 541.151(a)(3) and 541.060-154.062.

    d. Failing to pay the Judgment from the 352nd District Court attached as Exhibit A, within 5 days after becoming final on January 5, 2020.

32. Allstate willfully and intentionally violated the 352nd District Court's Sanction Order and failed to timely pay the Sanctions to Gerianna Jones that were found against Allstate.

33. Further, all such conduct by Defendants violate §17.50(a)(4) of the Tex. Dec. Trade Practice Act, §§17.43(b).

34. Defendant acted knowingly at all material times.

35. Defendant Allstate has a pattern of denying UIM/UM claims in Tarrant County, Texas during the past 3 years.

36. Allstate has a policy and procedure to unreasonably deny or delay payments to insureds like Gerianna Jones. Allstate's 2018 annual report at page 170, reports that open claims increase from 2016 to 2017 by 4,000 pending claims and then from 2017 to 2018 increased by 50,000 pending claims.

37. These violations and breaches of the Insurance Code and DTPA are a producing cause of

Plaintiffs' injuries and damages.

38. Under Texas Insurance Code § 541.060, Allstate has an obligation "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of…a claim with respect to which the insurer's liability has become reasonably clear." Such an obligation necessarily entails an obligation to make a reasonable offer. Alternatively, if an insurer denied the claim, it is required to "promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim."

39. Plaintiff presented an uninsured motorist claim to Allstate with economic damages far in excess of the third-party's liability insurance of 100k. Allstate made no offer and failed to provide any explanation for its failure to do so, which is a violation of Texas Insurance Code § 541.151(a)(3). There is no evidence that Allstate made any evaluation of the UIM claim.

40. Under Texas Insurance Code § 541.060 et seq., Allstate was obligated to make a reasonable settlement offer or to explain its denial *before* Gerianna Jones filed suit in this action. Allstate's compliance with § 541.060 would have increased the chance of settlement.

## BEACH OF CONTRACT

41. Defendant Allstate breached the insurance contract by failing to provide the UIM benefits promised to Plaintiff Jones for the injuries and damages that she suffered in the accident, and this breach of contract caused Plaintiff Jones's damages as set forth herein.

42. The Judgment against Allstate was signed December 5, 2019 and was final January 4, 2020. Defendant waited an additional 40 days to pay the Judgment.

43. Plaintiff Jones seeks damages within the jurisdictional limits of this Court.

## DAMAGES

44. Plaintiff suffered serious financial hardship by the delay in payments. Plaintiff incurred costs of pawning her wedding rings, vehicle repossession, costs for abstracting and executing on the Judgment, pay day loan costs, lost income, Dr. Henry's deposition for trial cost $5,000. All of these have caused in the past and in the future financial hardship, family financial hardship, economic loss and loss of use of the insurance proceeds. Plaintiff should have been compensated more than two years ago the $100,000 insurance proceeds. Plaintiff then was denied again the payment of the Judgment. Plaintiff also pleads for all additional damages allowed by law and pursuant to the Texas Insurance Code and Texas Deceptive Trade Practices Act.

45. Plaintiff pleads for double and treble damages where applicable, attorney fees, costs of court, 18% interest pursuant to the Insurance Code and punitive damages.

## ATTORNEY'S FEES

46. Defendants conduct has made it necessary for Plaintiff to obtain representation with the undersigned attorney and incur reasonable and necessary attorney fees. Pursuant to Texas Civil Practice & Remedies Code for breach of contract, Insurance Code, and DTPA violations, attorney fees are recoverable by Plaintiff.

47. Further, for each cause of action, Plaintiff is entitled to reasonable attorney fees in the prosecution of all actions.

## CONDITIONS PRECEDENT

48. Plaintiff has fully complied with all the terms of said Texas automobile insurance policy as a condition precedent to bringing this suit. Plaintiff obtained a Judgment against Allstate and Allstate refused to timely pay the Judgement and policy proceeds.

## PRAYER

## PRAYER

50.  Plaintiff prays that upon final hearing hereof, Plaintiff has and recover Judgment from the Defendant for all actual and additional damages above set forth, costs of Court, pre-judgment interest at the legal rate of interest as allowed by law, interest on the Judgment at the legal rate of interest from date of Judgment until same is paid, and for such other and further relief, special and general, to which Plaintiff is entitled, whether at law or in equity.

Respectfully submitted,

_____
ROBERT HASLAM
State Bar No. 09201900
555 South Summit Avenue
Fort Worth, Texas 76104
817/332-3115
817/332-3148 Fax
robert@hg555.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been served upon the following counsel of record electronically and in accordance with the Federal Rules of Civil Procedure on this _____ day of March, 2020.

_____
ROBERT HASLAM